# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

**ANDREW L. JACKSON,**

    Petitioner,

    v.                                                 Case No. 17-CV-17

**BYRAN BARTOW,**

    Respondent.

## DECISION AND ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS

Andrew L. Jackson, a prisoner in Wisconsin custody, seeks a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Jackson pled guilty to two counts of felony intimidation of a witness, one count of first degree reckless injury, and one count of aggravated battery. He was sentenced to thirty-one years, consisting of eighteen years of initial confinement followed by thirteen years of extended supervision. Jackson alleges that his conviction and sentence are unconstitutional. For the reasons stated below, the petition for writ of habeas corpus will be denied and the case dismissed.

## BACKGROUND

Jackson challenges his judgment of conviction for two counts of felony intimidation of a witness, one count of first degree reckless injury, and one count of aggravated battery in Milwaukee County Circuit Court. (Answer to Habeas Petition ("Answer"), Ex. 1, Docket # 9-1 at 1–4.) Jackson's conviction stems from a domestic violence incident between Jackson and his wife, in which Jackson poured boiling liquid on his wife and then slashed her arms with a butcher knife. (Answer, Ex. 5, *State v. Jackson*, Appeal No. 2013AP2859, 2013AP2860

(Wis. Ct. App. May 5, 2015), Docket # 9-5 at 2.) Jackson was later charged with four counts of felony witness intimidation, stemming from threatening phone calls made by Jackson to the victim. (*Id.*) The cases were consolidated for trial. (*Id.*)

On January 3, 2012, at one of the hearings leading up to Jackson's guilty pleas, Jackson asked the court to remove his trial counsel. (*Id.* at 3.) Jackson complained about communication issues with his attorney and his inability to see the discovery in his case. The trial court granted Jackson's motion and agreed to appoint successor counsel. (*Id.*) Because of concerns stemming from the intimidation charges, the trial court granted the State's request to order a restriction on Jackson's mail and phone privileges so that Jackson could communicate only with his attorney. (*Id.*)

Another hearing was held on March 7, 2012, where Jackson appeared with his successor counsel. (*Id.*) At the close of the hearing, counsel told the trial court that Jackson wanted him to withdraw as counsel. (*Id.*) The court said the issue would be addressed at a later hearing. (*Id.*) On April 24, 2012, counsel again told the trial court that Jackson wanted him to withdraw. (*Id.*) Jackson stated that he was unable to view discovery materials, had restricted communication privileges, and believed counsel did not have "faith" in him. (*Id.*) The trial court told Jackson that he needed a competent attorney to represent him and that Jackson would have to have a reason to appoint new counsel. (*Id.*) Jackson asked whether he could contact his family to try to get a private attorney, to which the trial court responded that he could do that, but the court could not oversee the restrictions he was under in the Department of Corrections. (*Id.* at 3–4.) Jackson responded that "if that's the case, ma'am, I will like to represent myself, ma'am." (*Id.* at 4.)

The trial court told Jackson it would consider his self-representation request, but explained that Jackson was "asking to do a tremendous amount of work and you don't know the rules of the game." (*Id.*) Jackson again asked the court to appoint new counsel, saying, "it's not working between us. That alone should be a good reason." (*Id.*) The trial court rejected Jackson's request to appoint a third attorney. Jackson again stated, "I would like to represent myself then." (*Id.*) The court responded as follows:

> We can set another time that you can come back and you can show me how prepared you have become and whether you have done what you need to do to be able to represent yourself because you can't just do this off the cuff.

(*Id.*) The court told Jackson to come to the next hearing prepared with a witness list, a list of questions for *voir dire*, and a draft of his opening statement if he wished to represent himself. (*Id.* at 5.) On August 17, 2012, at a hearing on a motion *in limine*, the trial court addressed Jackson's request to represent himself. (*Id.*) The court told Jackson that the trial was very complex and that representation required him to know a lot about the law. (*Id.* at 5–6.) The court noted that there were motions currently pending before the court and asked Jackson if he had studied the constitutional law behind the motions, to which Jackson responded that he was seeing the motions for the first time at that moment because of the lack of communication with his attorney. (*Id.* at 6.)

The trial court continued by noting that because Jackson was incarcerated, he would have difficulties getting information and doing legal research, to which Jackson responded "I'm ready ma'am." (*Id.* at 7.) The court stated, "This is the situation. When we last talked, I told you you had to come back here and prove to me that you were gonna be ready for this case. I wanted to see who – a list of your witnesses. I wanted to see the questions you were gonna ask the jury on voir dire. I wanted to see what you were gonna say to the jury on your

opening statement. We haven't gotten anything done . . . You can't answer the motions. You can't be prepared . . . I cannot let you continue, clearly incompetent, to present a case of this complexity. Now, I gave you a chance to prove to me you could do it. It didn't work. We're not going back there. That train has passed." (*Id.*)

Jackson pled guilty to four felony charges with the other charges dismissed and read in. (*Id.*) Jackson filed a postconviction motion seeking to withdraw his guilty pleas, arguing that the pleas were not knowingly, voluntarily, or intelligently entered because he was denied his right to self-representation. (*Id.* at 8.) Jackson further argued that Wisconsin's standard for evaluating a defendant's competency for self-representation was unconstitutional. (*Id.*) The trial court denied Jackson's motion, finding that Jackson's request to represent himself was "episodic driven," reflecting his "impulsive decision-making." (*Id.*)

Jackson appealed, and the court of appeals affirmed the judgment of conviction, finding Jackson was not improperly denied the right to represent himself. (*Id.* at 12–16.) The Wisconsin Supreme Court denied Jackson's petition for review on October 8, 2015. (Answer, Ex. 8, Docket # 9-8.) Jackson filed a timely petition for writ of habeas corpus on January 4, 2017. (Docket # 1.)

## STANDARD OF REVIEW

Jackson's petition is governed by the Antiterrorism and Effective Death Penalty Act ("AEDPA"). Under AEDPA, a writ of habeas corpus may be granted if the state court decision on the merits of the petitioner's claim (1) was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1); or (2) "was based on an unreasonable

determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2).

A state court's decision is "contrary to . . . clearly established Federal law as established by the United States Supreme Court" if it is "substantially different from relevant [Supreme Court] precedent." *Washington v. Smith*, 219 F.3d 620, 628 (7th Cir. 2000) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)). The court of appeals for this circuit recognized the narrow application of the "contrary to" clause:

> [U]nder the "contrary to" clause of § 2254(d)(1), [a court] could grant a writ of habeas corpus . . . where the state court applied a rule that contradicts the governing law as expounded in Supreme Court cases or where the state court confronts facts materially indistinguishable from a Supreme Court case and nevertheless arrives at a different result.

*Washington*, 219 F.3d at 628. The court further explained that the "unreasonable application of" clause was broader and "allows a federal habeas court to grant habeas relief whenever the state court 'unreasonably applied [a clearly established] principle to the facts of the prisoner's case.'" *Id.* (quoting *Williams*, 529 U.S. at 413).

To be unreasonable, a state court ruling must be more than simply "erroneous" and perhaps more than "clearly erroneous." *Hennon v. Cooper*, 109 F.3d 330, 334 (7th Cir. 1997). Under the "unreasonableness" standard, a state court's decision will stand "if it is one of several equally plausible outcomes." *Hall v. Washington*, 106 F.3d 742, 748–49 (7th Cir. 1997). In *Morgan v. Krenke*, the court explained:

> Unreasonableness is judged by an objective standard, and under the "unreasonable application" clause, "a federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable."

232 F.3d 562, 565–66 (7th Cir. 2000) (quoting *Williams*, 529 U.S. at 411), *cert. denied*, 532 U.S. 951 (2001). Accordingly, before a court may issue a writ of habeas corpus, it must determine that the state court decision was both incorrect and unreasonable. *Washington*, 219 F.3d at 627.

## ANALYSIS

Jackson argues he was denied his constitutional right to represent himself. (Docket # 1 at 6–7.) If this case were simply a matter of determining the merits of this issue—whether the Wisconsin Court of Appeals' denial of Jackson's Sixth Amendment right to represent himself was contrary to, or an unreasonable application of, binding Supreme Court precedent, specifically *Faretta v. California*, 422 U.S. 806 (1975) and its progeny—I would undoubtedly conclude that it was and would grant Jackson a writ of habeas corpus. But Jackson did not go to trial in this case. He pled guilty, which adds a wrinkle to the analysis, namely, the principle that a defendant waives his *Faretta* claim by entering a knowing and voluntary unconditional guilty plea. *See Gomez v. Berge*, 434 F.3d 940, 943 (7th Cir. 2006).

    1.    *Right to Self-Representation*

        1.1    Supreme Court Precedent

In *Faretta*, the Supreme Court held that the Sixth Amendment guarantees criminal defendants the right to self-representation. 422 U.S. at 818–32. The *Faretta* Court found that in order to represent himself, the accused must knowingly and intelligently relinquish his right to counsel. *Id.* at 835. The Court stated that although "a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice

is made with eyes open.'" *Id.* (internal citation omitted). Additionally, the Supreme Court in *Godinez v. Moran*, 509 U.S. 389 (1993) found that the competency standard for pleading guilty or waiving the right to counsel is no higher than the basic competency standard for standing trial. *Id.* at 399. However, the Court also acknowledged that states were free to adopt "more elaborate" mental competency standards than those articulated by the Court in *Dusky v. United States*, 362 U.S. 402 (1960). *Id.* at 402.

In *Indiana v. Edwards*, 554 U.S. 164 (2008), the Supreme Court stated that *Godinez* involved a "gray area" of defendants who are competent to stand trial, but whose mental illness or disability renders them incompetent to conduct trial proceedings without counsel. *Id.* at 172–73. The *Edwards* Court found that states may insist upon trial counsel for these "gray area" defendants because allowing a defendant who was fit to stand trial but who nevertheless lacked the mental capacity "to carry out the basic tasks needed to present his own defense without the help of counsel" would "undercut[ ] the most basic of the Constitution's criminal law objectives, providing a fair trial." *Id.* at 174–77. *Edwards* did not, however, for example, introduce "the possibility of taking into account the defendant's legal knowledge" in determining competence to represent oneself. *See Tatum v. Foster*, 847 F.3d 459, 465 (7th Cir. 2017).

The Wisconsin Supreme Court, relying on *Godinez,* has found that there is a higher standard for determining whether a defendant is competent to represent himself than for determining whether a defendant is competent to stand trial. *State v. Klessig*, 211 Wis. 2d 194, 212, 564 N.W.2d 716, 724 (1997) ("This higher standard is not based on the requirements of the Sixth Amendment, but stems from the independent adoption of the higher standard by the State as allowed under *Godinez*.").

### 1.2 Seventh Circuit Precedent

In the last several years, the Seventh Circuit has considered and synthesized the principles emerging from *Faretta*, *Godinez*, and *Edwards* as they bear on the Wisconsin courts' application of *Klessig*. *See Washington v. Boughton*, 884 F.3d 692 (2018); *Tatum v. Foster*, 847 F.3d 459 (7th Cir. 2017); *Jordan v. Hepp*, 831 F.3d 837 (7th Cir. 2016); *Imani v. Pollard*, 826 F.3d 939 (7th Cir. 2016). In *Washington,* the trial court gave three reasons for finding Washington was not competent to represent himself: (1) he was unfamiliar with the rules of evidence; (2) he was ill-equipped to deal with the state's DNA evidence; and (3) it would be "problematic" for him to cross-examine the state's witnesses. *Id.* at 701. The Wisconsin Court of Appeals did not address the first and third reasons, but concluded that Washington's "irrational and disruptive" behavior leading up to trial evidenced the inability "to understand and decipher" the state's DNA evidence. *Id.* The Wisconsin Court of Appeals also found that Washington's "inability to recognize and follow courtroom decorum or to identify and argue legitimate legal issues in his own defense" supported the trial court's determination that he would be unable to focus on and understand the DNA evidence. *Id.* at 701–02.

The Seventh Circuit found that the Wisconsin Court of Appeals' denial of Washington's right to represent himself was contrary to and an unreasonable application of Supreme Court precedent. The Seventh Circuit stated that a "preliminary scan of the authorities the appellate court relied upon for its analysis does not bode well for its conclusion. With no mention of *Faretta* or the line of Supreme Court precedent it engendered on the subject of self-representation, the Wisconsin Court of Appeals relied almost exclusively on *State v. Klessig*, which state courts have interpreted as authorizing a heightened competency standard whose application we have criticized in several recent decisions." *Id.* at 702. The

Seventh Circuit reiterated that when the Wisconsin courts force a lawyer upon a defendant based upon his perceived lack of education, experience, or legal knowhow, this violates the clearly established rule of *Faretta*. *Id.*

Similarly, in *Tatum*, the Seventh Circuit concluded that the Wisconsin Supreme Court's application of *Klessig* was contrary to, and an unreasonable application of, *Faretta* and its progeny when it denied Tatum's right to self-representation because his statements in court "reflect[ed] his limited understanding of the scope of a proper investigation for the defense of homicide charges and . . . he failed to appreciate courtroom decorum and legal technicalities." 847 F.3d at 468.

In *Imani*, the Seventh Circuit found the Wisconsin Supreme Court's decision violated *Faretta* and its progeny in three distinct ways. First, the state court in effect required Imani to persuade the trial judge that he was making a knowing and voluntary decision to waive his right to counsel when it is the judge's job to make sure that Imani's waiver was knowing and voluntary. 826 F.3d at 944–45. Second, the state court required Imani to persuade the trial judge that he had a good reason to choose self-representation. The trial court denied Imani his right to self-representation because it concluded he was making a decision without a "sufficiently rational basis" driven by momentary frustration with his counsel. *Id.* at 945. The court found that "denying a defendant his Sixth Amendment right to proceed *pro se* because his choice is foolish or rash is also contrary to *Faretta*." *Id.* And third, the court found that the state court imposed a competence standard much more demanding than *Faretta* and its progeny allow when it held Imani to a standard that required him to have prior criminal trial experience. *Id.* at 946. The court reiterated *Faretta*'s finding that technical legal knowledge is irrelevant to the assessment of a knowing exercise of the right to defend himself. *Id.* The court

9

acknowledged, however, the exception for "gray area defendants" that suffer from severe mental illness to the point they are not competent to conduct trial proceedings by themselves. *Id.*

The only case in recent years in which the Seventh Circuit upheld the Wisconsin court's application of *Klessig* was in *Jordan*; however, it that case, the defendant was functionally illiterate and while the Seventh Circuit stated that "[i]f it were up to us, we would find that Jordan's *Faretta* rights were violated," it ultimately concluded that within AEDPA's deferential constraints, the state court did not unreasonably consider Jordan's illiteracy to fall within the scope of "mental disability" the Court recognized as deserving special consideration. 831 F.3d at 843–46.

### 1.3 Application to this Case

In this case, the Wisconsin Court of Appeals found that Jackson did not knowingly, voluntarily, and intelligently waive his right to counsel, upholding the trial court's findings the despite numerous opportunities to explain why he wanted to represent himself, his requests were "episodic driven." (Docket # 9-5 at 13.) The court of appeals noted that Jackson's requests for self-representation stemmed from complaints about appointed counsel following unsuccessful motions. (*Id.*) The court of appeals held that the trial court "properly conclud[ed] Jackson's requests were impulsive and stemmed solely from dissatisfaction with his appointed counsel—not from a genuine desire to represent himself." (*Id.* at 14.) The court of appeals also found that it was reasonable for a court to ask a defendant to demonstrate his understanding of the legal issues in the case, which Jackson could not do. (*Id.* at 14–15.)

The court of appeals also found that Jackson was not competent to represent himself because he did not understand the pending motions, seemed confused about court procedure,

and had an inability to properly prepare because of his phone and mail restrictions and his incarceration. (*Id.* at 15–16.)

The Seventh Circuit's authority cited above leads to only one conclusion—the Wisconsin Court of Appeals' application of *Klessig* to this case was contrary to, and an unreasonable application of, *Faretta* and its progeny. Jackson's case is indistinguishable from *Imani*. In fact, the trial judge in Imani used the exact same language as the trial judge in Jackson's case, both calling the defendants' decisions "episodic driven," stemming from the loss of a motion. 826 F.3d at 942. As the *Imani* court found, "[n]othing in *Faretta* or its progeny allows the judge to require the defendant to prove he is making the choice for a reason the judge finds satisfactory," *id.* at 945, but that is precisely what the trial judge did in Jackson's case, going so far as to tell Jackson that he failed to "prove" to her that he could represent himself, (Docket # 9-5 at 7).

The court of appeals also violated *Faretta* and its progeny by inquiring into Jackson's legal expertise. Again, technical legal knowledge is not relevant to an assessment of one's knowing exercise of the right to defend himself. *Imani*, 826 F.3d at 946 (citing *Faretta*, 422 U.S. at 836). The court of appeals even went so far as to base Jackson's incompetence on the fact he was incarcerated; thus, making the ability to prepare for trial more difficult. (Docket # 9-5 at 16.) If incarceration was the standard for incompetence to represent oneself, many defendants would fall into that category.

2.  *Effect of Guilty Plea*

If my analysis could end here, I would find Jackson's rights under the Sixth Amendment were violated and would grant him the writ. However, as stated from the outset, Jackson's case has one significant difference from those found in *Washington*, *Tatum*, *Jordan*,

11

and *Imani*. In those cases, the defendants all went to trial while Jackson pled guilty. "Once a plea of guilty has been entered, non-jurisdictional challenges to the constitutionality of the conviction are waived and only the knowing and voluntary nature of the plea may be attacked." *United States v. Brown*, 870 F.2d 1354, 1358 (7th Cir. 1989). Thus, a guilty plea generally closes the door to claims of constitutional error.

In *Gomez*, the defendant pleaded no contest to first-degree reckless homicide after entering into a plea agreement with the government. 434 F.3d at 942. Gomez attempted to withdraw his plea, claiming it was involuntary, and the motion was denied. On direct appeal, Gomez argued that the trial court violated his right to represent himself by basing its decision to terminate that right on the court's disagreement with Gomez's trial strategy. *Id.* The Wisconsin Court of Appeals affirmed the conviction, finding that Gomez was incompetent to conduct his own defense. *Id.* Gomez raised the same argument in a petition for a writ of habeas corpus. The Seventh Circuit found that "by pleading no contest to the charges against him, Gomez waived his right to challenge any other alleged constitutional violations that preceded his plea. This includes contesting the trial court's determination that he was not competent to represent himself at trial." *Id.* at 943.

As the Sixth Circuit noted in *Werth v. Bell*, 692 F.3d 486 (6th Cir. 2012), the question of whether a defendant allegedly denied his right to self-representation can challenge this issue on appeal has divided state and federal courts. *Id.* at 495. The court noted that some courts "treat a *Faretta* challenge exactly like any other non-jurisdictional challenge, holding that a defendant waives his self-representation claim by entering a knowing and voluntary unconditional guilty plea," while one court (the Ninth Circuit) has held that a defendant who

pleads guilty unconditionally may still maintain his *Faretta* challenge on appeal. *Id.* The Supreme Court has not spoken on the issue. *Id.*

To overcome the *Gomez* hurdle, Jackson argues that waiver is an affirmative defense listed in Fed. R. Civ. P. 8(c) and because the respondent never pled the affirmative defense, it is waived. (Reply Br. at 2, Docket # 13.) While I acknowledge the term "waiver" is listed in Rule 8 as an affirmative defense, I do not believe the principle that a plea waives certain constitutional violations is an affirmative defense in the traditional sense of the word. Rather, it is an independent bar to habeas relief.

Jackson also argues that the law has changed since *Gomez* was decided. Specifically, in *United States v. Gonzalez-Lopez*, 548 U.S. 140 (2006), the Supreme Court found that the deprivation of the right to counsel of choice is a structural error and thus not subject to a harmless error analysis. *Id.* at 150. Jackson argues that the Seventh Circuit, relying on *Gonzalez-Lopez*, reasoned in *United States v. Smith*, 618 F.3d 657 (7th Cir. 2010) that a defendant's guilty plea does not preclude him from challenging on appeal a denial of his right to counsel of choice. *Id.* at 663. Jackson argues that there is no principled distinction between the deprivation of right to counsel of choice and the denial of self-representation; thus, denial of the right to self-representation is also a structural error not subject to waiver.

While Jackson's argument is appealing, the Supreme Court's decision in *Gonzalez-Lopez* did not concern a *Faretta* claim. As the Sixth Circuit noted, the Supreme Court has not yet addressed this specific issue. Additionally, the Seventh Circuit in *Smith* did not overrule its decision in *Gomez*. Given the Seventh Circuit's precedent in *Gomez*, I am compelled to find that Jackson's guilty plea waived his claim that his right to self-representation was violated. For these reasons, Jackson's writ of habeas corpus is denied and the case is dismissed.

# CERTIFICATE OF APPEALABILITY

According to Rule 11(a) of the Rules Governing § 2254 Cases, the court must issue or deny a certificate of appealability "when it enters a final order adverse to the applicant." A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make a substantial showing of the denial of a constitutional right, the petitioner must demonstrate that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 484 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893, and n.4).

When issues are resolved on procedural grounds, a certificate of appealability "should issue when the prisoner shows, at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Id.* Each showing is a threshold inquiry; thus, the court need only address one component if that particular showing will resolve the issue. *Id.* at 485.

I will grant Jackson a certificate of appealability in this case. I find that in light of the Seventh Circuit's recent decision in *Smith*, the question of whether a denial of self-representation presents a structural error which cannot be waived by a guilty plea is an issue adequate to deserve encouragement to proceed further.

# ORDER

**NOW, THEREFORE, IT IS ORDERED** that the petitioner's petition for a writ of habeas corpus (Docket # 1) be and hereby is **DENIED**.

**IT IS FURTHER ORDERED** that this action be and hereby is **DISMISSED**.

**IT IS ALSO ORDERED** that petitioner is granted a certificate of appealability.

**FINALLY, IT IS ORDERED** that the Clerk of Court enter judgment accordingly.

Dated at Milwaukee, Wisconsin this 26th day of December, 2018.

BY THE COURT:

*s/Nancy Joseph*
NANCY JOSEPH
United States Magistrate Judge